IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED-ED4
2005 JAN 13 PM 4: 25
CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| DAVID ROTH, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICEMAX INC., CHRISTOPHER C. MILLIKEN and THEODORE CRUMLEY,<br><br>Defendants. | JUDGE GOTTSCHALL<br><br>No. 05C 0236<br><br>MAGISTRATE JUDGE DENLOW<br><br>*JURY TRIAL DEMANDED*<br><br>**DOCKETED**<br>JAN 1 4 2005 |

## CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

### SUMMARY AND OVERVIEW

1.  This is a securities class action on behalf of all purchasers of the publicly traded securities of OfficeMax Inc. ("OfficeMax" or the "Company") between November 9, 2004 and January 11, 2005 (the "Class Period"), against OfficeMax and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.  OfficeMax, formerly Boise Cascade Corporation, is a multinational contract and retail distributor of office supplies and paper, technology products and office furniture.

3.  During the Class Period, defendants made false and misleading statements regarding the Company's earnings. The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

    (a)  that for a period of at least two years, millions of dollars worth of the Company's sales were fraudulently booked as legitimate sales;

- 1 -

(b) that the Company was using (and manipulating its use of) "vendor allowances"[1] in order to manipulate the Company's earnings and timing of revenue recognition;

(c) that the Company's Q4 2004 results and those beyond were being eroded by the Company's internal investigation costs and the halting of the Company's abusive vendor allowance scheme;

(d) that the Company lacked the necessary internal controls to insure all revenue reported complied with generally accepted accounting principles ("GAAP"); and

(e) that the Company had entered into a long term-paper supply contract with Boise Cascade, LLC – the Company's timber successor company – which, unbeknownst to investors, was not commensurate with the market rate.

4. As a result of the defendants' false statements, OfficeMax's stock price traded at inflated levels during the Class Period, increasing to as high as $32.52 on December 16, 2004, whereby the Company's top officers and directors arranged to sell nearly $1.5 billion worth of the Company's notes.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred by §21 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

6. Venue is proper in this District pursuant to §21 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

7. The Company's principal executive offices are in Itasca, Illinois, where the day-to-day operations of the Company are directed and managed.

---

[1] Vendor allowances are monies paid by suppliers for promotions, prime shelf space, discounts and rebates.

## THE PARTIES

*Plaintiff*

8. David Roth purchased OfficeMax publicly traded securities as described in the attached certification and was damaged thereby.

*Defendants*

9. OfficeMax, formerly Boise Cascade Corporation, is a multinational contract and retail distributor of office supplies and paper, technology products and office furniture.

10. Christopher C. Milliken ("Milliken") was the President, CEO and a director of OfficeMax. During the Class Period, Milliken signed the false and misleading Form 10-Q.

11. Theodore Crumley ("Crumley") was the CFO of OfficeMax. During the Class Period, Crumley signed the false and misleading Form 10-Q.

12. The individuals named as defendants in ¶¶10-11 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of OfficeMax's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein at ¶¶17, 21-22, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SCIENTER

13. In addition to the above-described involvement, each Individual Defendant had knowledge of OfficeMax's problems and was motivated to conceal such problems. Crumley, as CFO, was responsible for financial reporting and communications with the market. Many of the internal reports showing OfficeMax's forecasted and actual growth were prepared by the finance department under Crumley's direction. Defendant Milliken, as CEO and President, was responsible for the financial results and press releases issued by the Company. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market.

14. Defendants were motivated to engage in the fraudulent practices alleged herein in order to obtain financing for the Company and prove to the market the Company could operate profitably without its timber division.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

15. Each defendant is liable for (i) making false statements, *or* (ii) failing to disclose adverse facts known to him about OfficeMax. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of OfficeMax publicly traded securities was a success, as it (i) deceived the investing public regarding OfficeMax's prospects and business; (ii) artificially inflated the prices of OfficeMax's publicly traded securities; (iii) allowed defendants to arrange to sell $1.5 billion worth of OfficeMax notes at artificially inflated prices (with preferential interest rates to the Company); and (v) caused plaintiff and other members of the Class to purchase OfficeMax publicly traded securities at inflated prices.

## BACKGROUND

16. The Boise Cascade Corporation bought OfficeMax in 2003 for about $1.06 billion and in October 2004, completed the sale of paper and timberland assets for $3.7 billion. In November, the Company adopted the "OfficeMax" name.

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

17. On November 9, 2004, the Company filed its Form 10-Q for the period ended September 30, 2004. The 10-Q was signed by defendants Milliken as CEO and Crumley as CFO. In the 10-Q, defendants claimed that they personally supervised the evaluation of the design and operation of the Company's disclosure procedures pursuant to Rule 13a-15(e), to ensure that the Company's controls would alert them to material information which would conflict with GAAP and/or require disclosure. Defendants affirmatively stated on November 9, 2004 that no such disclosure issues or control problems existed.

18. On November 11, 2004, two days *after* the November 9, 2004 10-Q was filed, *Bloomberg* issued an article entitled "OfficeMax Hires Anderson as Chief Financial Officer." The article stated in part:

> OfficeMax, Inc., the office supply retailer that was acquired by Boise Cascade Corp. in December, named Brian Anderson chief financial officer and executive vice president of finance.

19. Defendant Crumley immediately resigned as the Company was preparing to sell nearly $1.5 billion worth of OfficeMax debt.

20. On December 17, 2004, *Bloomberg* issued an article entitled "OfficeMax Sells $1.47 Bln in Debt, Due October 2019." The article stated in part:

> OfficeMax Inc., the U.S. office-supply retailer acquired by Boise Cascade Corp., said it will sell $1.47 billion in debt.

- 5 -

The debt, to be issued in two notes with interest rates of 5.42 percent and 5.54 percent, respectively, will be payable in October 2019, the Itasca, Illinois-based [sic] said in a filing with the U.S. Securities and Exchange Commission.

The company also settled $1.47 billion in interest-rate swaps with Goldman Sachs Group Inc. unit J. Aron & Co. Dec. 16, paying $19 million to J. Aron, because of a decline in long-term interest rates, OfficeMax said in the filing.

21.   On December 20, 2004, the Company issued a press release entitled "OfficeMax Announces Financial Events, Commences Investigation." The press release stated in part:

OfficeMax® Incorporated, a leader in office products and services, today announced monetization of the promissory notes received from the sale of its timberlands and the distribution of OMX common stock to holders of its Adjustable Conversion-Rate Equity Security (ACES) units. The company also announced it has commenced an investigation into certain vendor allegations, and that it is postponing a decision on the form and timing of equity repurchases until the investigation is complete.

On October 29, 2004, OfficeMax closed the sale of its paper and forest products businesses. At that time, the company received $2.025 billion in cash for the assets sold, and an additional $15 million in cash and promissory notes of $1.635 billion for the timberlands portion of the sale. On December 21, 2004, the company will realize $1.470 billion in cash, before transaction expenses and related costs, from the monetization of those notes. In addition to $15 million received at closing and $1.470 billion realized from the monetization, the company will retain a residual interest in timber promissory notes of $165 million due in 2019.

On December 16, 2004, holders of OfficeMax's outstanding 7.50% equity security units received 5.41 million newly issued shares of OMX common stock in exchange for cash proceeds to OMX of $172.5 million. The settlement rate was 1.5689 shares of OMX common stock for each purchase contract forming a part of the $50 stated amount of each equity security unit. Following the conversion, OfficeMax has approximately 95 million fully diluted shares of common stock.

OfficeMax intends to use the proceeds from monetization of the timber promissory notes and conversion of the equity security units to continue its debt reduction program and to repurchase between $775 million and $815 million of its common stock. ***However, at the direction of the audit committee of its board of directors, the company has commenced an internal investigation into claims by a vendor to its retail business that certain employees acted inappropriately in requesting promotional payments and in falsifying supporting documentation for approximately $3.3 million in claims billed to the vendor by OfficeMax during 2003 and 2004. Because the company's investigation has only recently begun, the company is postponing a decision as to the form and timing of share repurchases until the investigation is complete.***

- 6 -

22. On January 5, 2005, the Company issued a press release entitled "OfficeMax Announces Peterson Resignation." The article stated in part:

> OfficeMax® Incorporated, a leader in office products and services, today announced the resignation of Gary Peterson, president of the company's retail division, effective immediately. The company noted that the timing of Mr. Peterson's departure is unrelated to the company's current investigation into allegations of impropriety regarding vendor promotional payments.

23. On January 12, 2005, *CBSMarketWatch* issued an article entitled "OfficeMax delays earnings report; CFO quits." The article stated in part:

> Office Max Inc. said Wednesday it will postpone the release of its fourth-quarter and full-year earnings reports, pending the conclusion of a now-expanded probe into an accounting fraud.
>
> \* \* \*
>
> In addition, the company said Chief Financial Officer Brain Anderson resigned after two months on the job. Former CFO Ted Crumley will return to that post on an interim basis, the company said.
>
> OfficeMax, which first disclosed the investigation Dec. 20, said it has confirmed claims by a vendor that certain employees created false documents to support about $3.3 million in claims billed to a vendor in 2003 and 2004.
>
> Four employees have been fired as a result of the investigation, the company said.
>
> OfficeMax spokesman Bill Bonner said the company could not reveal the name of the employees, or the vendor, as the investigation is still underway.
>
> The Itasca, Ill.-based office products retailer said that as a result of information discovered in its investigation, it has expanded the scope of the inquiry to include accounting procedures for rebates and other vendor payments in fiscal 2003 and 2004.
>
> OfficeMax said it expects to finish the probe by the third full-week of February, and intends to proceed with its previously stated share repurchase program once fiscal 2004 results have been reported.
>
> On Oct. 29, the company -- then known as Boise Cascade Corp. -- closed the sale of its paper and forest products businesses and changed its name to OfficeMax, which it purchased in 2002.
>
> The company received $2.035 billion in cash for the assets sold, as well as an additional $15 million in cash and promissory notes of $1.64 billion for the timberlands portion of the sale.

OfficeMax had intended to use part of the proceeds from the sale to buy back $775 million to $815 million of its common stock, as well as pay down some debt.

24.     OfficeMax shares fell more than 5% to $28.58 in recent trading, after trading as low as $27.82 earlier in the session.

25.     The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a)     that for a period of at least two years, millions of dollars worth of the Company's sales were fraudulently booked as legitimate sales;

(b)     that the Company was using (and manipulating its use of) "vendor allowances"[2] in order to manipulate the Company's earnings and timing of revenue recognition;

(c)     that the Company's Q4 2004 results and those beyond were being eroded by the Company's internal investigation costs and the halting of the Company's abusive vendor allowance scheme;

(d)     that the Company lacked the necessary internal controls to insure all revenue reported complied with GAAP; and

(e)     that the Company had entered into a long-term paper supply contract with Boise Cascade, LLC – the Company's timber successor company – which, unbeknownst to investors, was not commensurate with the market rate.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5 Against All Defendants

26.     Plaintiff incorporates ¶¶1-25 by reference.

---

[2]     Vendor allowances are monies paid by suppliers for promotions, prime shelf space, discounts and rebates.

27. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

28. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

   (a) Employed devices, schemes, and artifices to defraud;

   (b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

   (c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of OfficeMax publicly traded securities during the Class Period.

29. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for OfficeMax publicly traded securities. Plaintiff and the Class would not have purchased OfficeMax publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

30. As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of OfficeMax publicly traded securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

31. Plaintiff incorporates ¶¶1-30 by reference.

32. The Individual Defendants acted as controlling persons of OfficeMax within the meaning of §20(a) of the 1934 Act. By reason of their positions as officers and/or directors of OfficeMax, and their ownership of OfficeMax stock, the Individual Defendants had the power and authority to cause OfficeMax to engage in the wrongful conduct complained of herein. OfficeMax controlled each of the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and OfficeMax are liable pursuant to §20(a) of the 1934 Act.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased OfficeMax publicly traded securities (the "Class") on the open market during the Class Period. Excluded from the Class are defendants.

34. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. OfficeMax had more than 88 million shares of stock outstanding, owned by hundreds if not thousands of persons.

35. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether the 1934 Act was violated by defendants;

(b) Whether defendants omitted and/or misrepresented material facts;

(c) Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e) Whether the prices of OfficeMax's publicly traded securities were artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

36. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

37. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to FRCP 23;

B. Awarding plaintiff and the members of the Class damages, interest and costs; and

C. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 13, 2005

DAVID ROTH, on behalf of himself and all others similarly situated, Plaintiff

By: *[signature]*

Marvin A. Miller
Jennifer W. Sprengel
Nyran Rose Pearson
**MILLER FAUCHER and CAFFERTY LLP**
30 North LaSalle Street, Suite 3200
Chicago, Illinois 60602
(312) 782-4880

*Designated Local Counsel*

William S. Lerach
Darren J. Robbins
**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
401 B. Street, Suite 1600
San Diego, California 92101
(619) 231-1058

Samuel H. Rudman
David A. Rosenfeld
**LERACH COUGHLIN SOTIA GELLER RUDMAN & ROBBINS LLP**
200 Broadhollow Road, Suite 406
Melville, Illinois 11747
(631) 367-7100

*Attorneys for Plaintiff*

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
(561) 750-3000
(561) 750-3364 Facsimile

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, **David Roth** ("Plaintiff"), declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1. Plaintiff has reviewed the **OfficeMax Inc.** complaint and authorized its filing.

2. Plaintiff did not purchase any common stock/securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate any private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4. The following includes all of Plaintiff's transactions during the Class Period specified in the complaint for the common stock/securities that are the subject of this action:

| SECURITY (Common Stock, Call, Put, Bonds) | TRANSACTION (Purchase, Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| OfficeMax (OMX) | Purchase | 150 | 12-3-04 | 31.15 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Please list additional transactions on a separate sheet if necessary.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

**Aon Corp., Taro Pharm.**

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12 day of January, 2005.

X *David Roth*
SIGNATURE



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Plaintiff(s):** DAVID ROTH,

County of Residence: Palm Beach County

Plaintiff's Atty: Miller Faucher and Cafferty LLP
30 North LaSalle Street, Suite 3200
Chicago, Illinois 60602
(312) 782-4880

**Defendant(s):** OFFICEMAX INC., et al.,

County of Residence:

Defendant's Atty:

JUDGE GOTTSCHALL

**DOCKETED JAN 1 4 2005**

05C 0236

**II. Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

MAGISTRATE JUDGE DENLOW

**III. Citizenship of Principal Parties** (Diversity Cases Only)
  Plaintiff:- N/A
  Defendant:- N/A

**IV. Origin :** 1. Original Proceeding

**V. Nature of Suit:** 850 Securities / Commodities / Exchange

**VI. Cause of Action:** §§ 10(b) and 20(a), rule 10b-5

**VII. Requested in Complaint**
  Class Action: Yes
  Dollar Demand:
  Jury Demand: Yes

**VIII.** This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____
Date: 1/13/05

FILED 2005 JAN 13 PM 4:24 CLERK U.S. DISTRICT COURT

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

**DAVID ROTH,**

v.   Case Number: JUDGE GOTTSCHALL

**OFFICEMAX INC., et al.,**

05C 0236

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

David Roth, individually and on behalf of all others similarly situated, Plaintiff

MAGISTRATE

**DOCKETED**
JAN 1 4 2005

| (A) | (B) |
|---|---|
| SIGNATURE *William S. Lerach/mm* | SIGNATURE |
| NAME William S. Lerach | NAME Marvin A. Miller |
| FIRM Lerach Coughlin Stoia Geller Rudman & Robbins LLP | FIRM Miller Faucher and Cafferty LLP |
| STREET ADDRESS 401 B. Street, Suite 1600 | STREET ADDRESS 30 North LaSalle Street, Suite 3200 |
| CITY/STATE/ZIP San Diego, California 92101 | CITY/STATE/ZIP Chicago, Illinois 60602 |
| TELEPHONE NUMBER (619) 231-1058  FAX NUMBER | TELEPHONE NUMBER (312) 782-4880  FAX NUMBER 782-4485 |
| E-MAIL ADDRESS | E-MAIL ADDRESS mmiller@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 01916769 |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☑ | MEMBER OF TRIAL BAR?   YES ☒   NO ☐ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES ☒   NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?   YES ☒   NO ☐ |
| **(C)** | **(D)** |
| SIGNATURE *Darren Robbins/mm* | SIGNATURE *Jennifer W. Sprengel/mm* |
| NAME Darren J. Robbins | NAME Jennifer W. Sprengel |
| FIRM  Same as (A) | FIRM  Same as (B) |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER   FAX NUMBER | TELEPHONE NUMBER   FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS jsprengel@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06204446 |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☑ | MEMBER OF TRIAL BAR?   YES ☐   NO ☑ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES ☑   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☑ | DESIGNATED AS LOCAL COUNSEL?   YES ☑   NO ☐ |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

**DAVID ROTH,**

v.

**OFFICEMAX INC., et al.**

JUDGE GOTTSCHALL

Case Number: **05C 0236**

MAGISTRATE JUDGE DENLOW

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

David Roth, individually and on behalf of all others similarly situated, Plaintiff

DOCKETED JAN 14 2005

| (E) | (F) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: Samuel H. Rudman | NAME: Nyran Rose Pearson |
| FIRM: Lerach Coughlin Stoia Geller Rudman & Robbins LLP | FIRM: Same as (B) |
| STREET ADDRESS: 200 Broadhollow Road, Suite 200 | STREET ADDRESS: |
| CITY/STATE/ZIP: Melville, New York 11747 | CITY/STATE/ZIP: |
| TELEPHONE NUMBER: (631) 367-7100  FAX NUMBER: | TELEPHONE NUMBER:  FAX NUMBER: |
| E-MAIL ADDRESS: | E-MAIL ADDRESS: npearson@millerfaucher.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE): | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE): 06276743 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☑ NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☑ NO ☐ |

| (G) | (H) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: David A. Rosenfeld | NAME: |
| FIRM: Same as (E) | FIRM: |
| STREET ADDRESS: | STREET ADDRESS: |
| CITY/STATE/ZIP: | CITY/STATE/ZIP: |
| TELEPHONE NUMBER:  FAX NUMBER: | TELEPHONE NUMBER:  FAX NUMBER: |
| E-MAIL ADDRESS: | E-MAIL ADDRESS: |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE): | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE): |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☑ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

FILED 2005 JAN 13 PM 4:25 U.S. DISTRICT CLERK COURT